IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

OLD DOMINION ELECTRIC COOPERATIVE,

Plaintiff.

v.

Civil Action Number 3:05CV034-JRS

RAGNAR BENSON, INC.,

Defendant.

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Plaintiff Old Dominion Electric Cooperative's ("ODEC") Second Motion for Partial Summary Judgment. ODEC asks the Court to limit Defendant Ragnar Benson, Inc.'s ("RBI") potential damages to those directly incurred after September 14, 2004, and to preclude RBI from recovering damages based on claims of any subcontractor work occurring prior to September 14, 2004. For the reasons stated, ODEC's Second Motion for Partial Summary Judgment (**Docket Entry # 50**) is DENIED.

**I. BACKGROUND**

The Court views the material facts as undisputed and interprets them as follows. As full consideration for RBI's performance under the Engineer, Procure and Construct Contract (the "Contract" or "Agreement"), ODEC agreed to pay RBI $46,832,700.00 in monthly installments in accordance with the Progress Payment Schedule. EPC Contract § 7.1. The Contract required RBI to submit a written request for the payment due and certify that the requested payment was properly payable. The Contract further provided that each request was to be "accompanied by a certificate

1

and waiver and release of liens, duly completed and signed by an authorized representative of [RBI]." Id. RBI developed its own Release form to accompany its request for payment. The Release form, entitled "Partial Release of Lien," provides, in pertinent part, that RBI:

> [d]oes hereby certify to said Company [ODEC] that all persons, firms, associations, corporations or other entities furnishing labor, materials or equipment to it under said Contract have been or will be paid through this date,
>
> and
>
> [d]oes hereby agree to indemnify and same [sic] harmless [ODEC] . . . against all loss, cost, damage or expense to the extent arising by reason of any claim hereafter made by any subcontractor or material supplier for payment of labor performed, or for material or equipment furnished to [ODEC], under said Contract prior to the date hereof,
>
> and
>
> [d]oes hereby remise, release, waive, relinquish and forever quitclaim unto [ODEC] . . . any and all manner of liens, claims or demands whatsoever which, against [ODEC] . . . it ever had, now has, or which it or its successors or assigns hereafter can, shall or may have upon any portion of the lands of [ODEC] or the buildings thereon standing, for labor, material, fixtures, apparatus, machinery or equipment furnished by the undersigned or other under said Contract or otherwise to or on account of [ODEC] for the above described premises.

Partial Release of Lien, September 14, 2004 (attached to ODEC's Mem. Supp. Second Mot. Partial Summ. J. as Ex. 11). According to ODEC, RBI submitted a Release with every progress payment and received payment up to and including the August 2004 request, submitted on September 14, 2004.

Another Contract section, Section 3.16, entitled "No Liens," provides:

> So long as no undisputed amounts due hereunder are outstanding, in which such case only to the extent of such outstanding undisputed amount, Contractor shall not directly or indirectly create, incur,

> assume or suffer to be created by any of its subcontractors, vendors, laborers, materialmen, other suppliers of goods or services or any other person, any Lien on the Site, the Facility, or any part of or interest in either. Contractor shall pay or discharge (by bond or otherwise) any such Lien for labor, materials, supplies or other charges which, if unpaid, might be or become a Lien upon the Site or the Facility or any component of either. Contractor shall immediately notify Owner of the assertion of any Lien upon the Site, the Facility or any part thereof. Upon the failure of Contractor promptly to pay or discharge any Lien as required hereby and five (5) Business Days' written notice to Contractor, Owner may, at its option, pay or discharge such Lien and immediately recover the expenses incurred by it in connection with such payment or discharge from Contractor, draw upon the Letter of Credit or any other security available to Owner or set-off such expenses against any sums owed by Owner to Contractor.

EPC Contract § 3.16. Pursuant to the definition section of the Contract, "lien" means "any lien, mortgage, encumbrance, pledge, charge, lease, easement, servitude, adverse claim, right of others or security interest of any kind." Id. § 2.

Also related, Section 11.3 of the EPC Contract, entitled "The Effect of Owner Termination," provides that upon termination of the Contract pursuant to Sections 11.1 ("Default by Contractor") or 11.2 ("Termination at the Owner's Option"),

> Contractor shall be deemed to have waived any claim for damages, including loss of anticipated profits and unabsorbed overheads on account of this Agreement; provided, however, that in the event there is a termination of this Agreement other than a termination under Section 11.1 hereof, Owner shall have paid Contractor all amounts due to Contractor up to the date of termination according to the provisions of Section 7 hereof.

Id. § 11.3(F)(ii).

## II. ARGUMENTS

**A. ODEC's Arguments**

ODEC declares that the September 14, 2004 Release waives and releases all of RBI's claims

against ODEC as of that date. ODEC claims that RBI submitted an itemized list of damages as part of its discovery responses which attempted to pass through claims made by its subcontractors, including for work performed prior to September 14, 2004. ODEC insists that Section 7.1 and the Release form, as well as Sections 3.16 and 11.3 of the Contract, limit RBI's ability to recover against ODEC on the basis of claims made by RBI's subcontractors.[1] Because RBI's counterclaims are based on claims that existed prior to September 14, 2004, and because a large portion of RBI's counterclaims consist of claims submitted by RBI's subcontractors, ODEC asks the Court to apply the relevant Contract provisions and limit RBI's damages to those directly incurred after September 14, 2004.

As ODEC argues, by signing and submitting the Releases, RBI unambiguously waived any and all manner of claims that it had as of the date of each Release. Accordingly, ODEC contends, RBI may only assert claims which arose after September 14, 2004. In support of this argument, ODEC cites several basic contract law principles. "'It is the function of the court to construe the contract made by the parties, not to make a contract for them.'" Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)). "'Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning.'" Std. Banner Coal Corp. v. Rapoca Energy Co., 265 Va. 320, 325, 576 S.E.2d 435, 438 (2003) (quoting id.). ODEC also notes that "[n]o word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it." Id. "The contract is to be construed as a whole, and effect given to every provision thereof if possible. No word or

---

[1] The amounts of the subcontractor claims are not insignificant. ODEC states that RBI's claimed damages include subcontractor claims in the amount of $10,542,406.00; $2,853,880.31; $500,000.00; and $186,060.00.

4

paragraph can be omitted in construing the contract if it can be retained and a sensible construction given to the contract as a whole." Ames v. Am. Nat'l Bank of Portsmouth, 163 Va. 1, 38–39, 176 S.E. 204, 216 (1934) (quoting Scott v. Albemarle Horse Show Ass'n, 128 Va. 517, 526, 104 S.E. 842, 846 (1920)).

According to ODEC, Section 7.1 of the Contract expresses the conditions precedent for RBI to obtain progress payments. Each request for payment must be accompanied by a waiver and release of liens. ODEC suggests that the parties intended to create a payment system whereby RBI waived both liens and claims against ODEC in a progressive manner so that ODEC's liability is limited to the requested payment amount. Therefore, ODEC moves the Court to limit RBI's recovery, if any, to damages incurred after September 14, 2004.

ODEC also submits that RBI's agreement to indemnify ODEC prevents RBI from recovering damages based on subcontractor claims. Consequently, because RBI agreed in its Release form to indemnify ODEC for "all loss, damage or expense to the extent arising by reason of any claim hereafter made by any subcontractor," ODEC insists that RBI cannot recover damages based on claims made by subcontractors against RBI. ODEC contends that the indemnity language is sufficiently broad to cover claims not brought directly by subcontractors against ODEC. Additionally, ODEC argues that RBI cannot assert a breach of contract claim against ODEC for failure to pay a claim which RBI has agreed to indemnify against, because RBI cannot establish the "damage" element of a breach of contract claim.

**B.   RBI's Opposition**

RBI accuses ODEC of attempting to convert a release of a lien into a release of all claims of any kind that RBI may have against ODEC. RBI avers that, by signing the Release form, it did not

5

waive all of its claims through September 14, 2004. RBI claims that ODEC's interpretation of Section 3.16 is improper. Instead, RBI urges the Court to accept that the release and indemnification provisions simply indemnified ODEC for payments ODEC made to RBI so that ODEC would not be exposed to a claim for payment from a subcontractor after ODEC already made a payment to RBI for that subcontractor's work. RBI insists that it did not waive or release any of the additional claims made by subcontractors due to project delays or cost overruns caused by ODEC or by ODEC's failure to grant extensions and additional compensation where warranted.

At bottom, RBI maintains that the Partial Release of Liens form did not contain a waiver of all claims. Rather, RBI contends that the September 14, 2004 Release partially released liens to the extent of payments specified for materials and work furnished prior to September 14, 2004, and that it did not waive or release any other claims. RBI argues that its counterclaims relate to damages it sustained as a result of the extension of the schedule necessary to complete the Project due to compensable delays caused by ODEC's failure to grant RBI adequate relief.

RBI states that the September 14, 2004 Release was not intended as a general release of all claims it may have against ODEC. According to RBI, the Release is only a waiver of liens, and to the extent that the document refers to "claim," it concerns only claims for liens. The Release specifically releases and waives any and all manner of liens, claims, or demands "upon any portion of the lands of Company or Owner or the buildings thereon standing." As such, RBI claims that it released claims upon ODEC's land but did not waive the right to seek additional compensation as it believed it was entitled to under the Contract. RBI stresses that none of its counterclaims are against ODEC's land or buildings; rather, RBI requests a monetary judgment for the amount by which it has allegedly been damaged by ODEC's actions.

6

### III. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Smith v. Continental Casualty Co., 369 F.3d 412, 417 (4th Cir. 2004). By its very definition, the summary judgment standard provides "that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). At this stage, the Court will only concern itself with disputes over facts "that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Moreover, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. If "no genuine issue as to any material fact" exists, a court must decide if "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### IV. DISCUSSION

As stated earlier, the relevant sections of the Contract have been identified, and the Court does not find any genuine issue of material fact. As such, the Court must consider the appropriate legal framework to determine if ODEC is entitled to judgment as a matter of law. The Court

recognizes as a threshold principle that a release of a lien can be distinguished from a release of all potential claims. Also relevant is that under Virginia law, "[i]n a contract where particular provisions are inserted for the benefit of one of the parties, and those provisions are ambiguous, they are to be construed most strongly against the favored party [(ODEC)]." VNB Mortgage Corp. v. Lone Star Indus., Inc., 215 Va. 366, 372, 209 S.E.2d 909, 913 (1974).

Waiver arises when a party intentionally relinquishes a known right. Stockbridge v. Gemini Air Cargo, Inc., 269 Va. 609, 620, 611 S.E.2d 600, 605 (2005). A party seeking to establish the other's waiver must establish both "[k]nowledge of the facts basic to the exercise of the right and the intent to relinquish the right." Id. at 621, 611 S.E.2d at 606. Importantly, "[t]he party relying on a waiver has the burden 'to prove the essentials of such waiver . . . by clear, precise and unequivocal evidence.'" Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv., 267 Va. 642, 652, 595 S.E.2d 1, 6 (2004) (quoting Utica Mut. Ins. Co. v. Nat'l Indem. Co., 210 Va. 769, 773, 173 S.E.2d 855, 858 (1970)). The evidence submitted to establish a waiver "must not leave the matter to mere inference or conjecture but must be certain in every particular." Utica Mut. Ins. Co. v. Nat'l Indem. Co., 210 Va. 769, 773, 173 S.E.2d 855, 858 (1970).

The record before the Court is simply insufficient to grant ODEC judgment as a matter of law. Falling short on its evidentiary burden, ODEC has not presented to the Court clear and unequivocal evidence that RBI intended to waive or release all claims it might have against ODEC. At best, there remains some uncertainty as to RBI's intent in light of the language in the Release form providing for a waiver of "all manner of liens, claims or demands whatsoever . . . upon any portion of the lands of [ODEC] or the buildings thereon standing." This language describes liens or claims against the property in the traditional sense of a lien, rather than the broad interpretation

8

proposed by ODEC that would apply to the additional claims made by subcontractors due to project delays or cost overruns allegedly caused by ODEC. Summary judgment cannot be properly granted on such facts.

### V. CONCLUSION

For the reasons stated, ODEC's Second Motion for Partial Summary Judgment is hereby DENIED.

It is SO ORDERED.

           /s/   James R. Spencer
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this  4th  day of August 2006